Granger, C. J.
We are satisfied that the third stipulation, in “ the terms and conditions of such annexation,” authorized the city to collect, by a tax levied upon the general duplicate of the two wards, enough money to pay the bonds theretofore issued by the village, for so much of the cost of said street improvements, as exceeded the aggregate formed by the sums assessable under the original ordinances upon the abutting lots, and the $10,000, estimated cost of street intersections.
Sec. 590, Municipal Code, (66 Ohio Laws, 249,) was then in force. The entire cost of the improvement of street intersections was a debt of the village, payable out of the proceeds of a tax “ upon the general duplicate of all the real and personal property subject to taxation within the limits of the ” village.
The express exception of this cost, out of the bonds that the city was authorized to pay by collections from villagers’ property, necessarily implies that the power granted to the city, by the stipulation itself, included the power to levy and collect a tax, upon the general duplicate of the two wards alone, to pay bonds of the same character as those theretofore issued by the village for the cost of the improve *673 ment of street intersections. If the intent was to give power to assess abutting lots only, the exception has no meaning whatever. Neither city, nor village, had, or by agreement could confer, power to assess upon the abutting lots any part of the estimated cost of the street intersection improvements. The record shows no attempt by the village to make any such assessment. It is true that the ordinance to grade and improve Madison avenue, from Euclid avenue to the north line of the village, provided that the entire cost and expense of that improvement should be levied and assessed upon the abutting lots and lands. But it does not appear that any street intersection was included in said improvement. None of the bonds, about which the parties here contend, were issued for Madison avenue. The $10,000, estimated cost of street intersections, was made up of $6,476.45 for Euclid avenue ; $2,378.47 for Cedar street, and $1,145.08 for Fairmount street. The ordinances, as to those streets, imposed only two thirds of the entire expenses of the respective improvements upon the abutting lots, and charged the general duplicate with much more than the entire cost of said street intersections.
It seems plain that the ordinances, as to those streets, “ contemplated” the payment of at least one third of the bonds issued for said improvements, by the proceeds of taxes to be levied upon the general duplicate of the village. If no annexation had been made, such bonds could be paid in no other way. When the council had before it the question of making the improvement, and providing for a distribution of its cost, and, by ordinance or resolution, decided to charge only two thirds of the cost upon the abutting lots, and made the improvement under such ordinance, it had no power to, afterwards, re-distribute the burden, and increase the share to be assessed upon the lots.
The conduct of the parties to the stipulation, soon after the annexation, indicates that they both understood the intent to be precisely what we hold it was. The annexation was completed in 1872. The terms were agreed upon on August 3, 1872. In 1873, the city, by a tax limited to *674 the two wards, collected $45,000, to pay bonds of the same class as those for which the tax before us was levied. Some of the men, who acted for the village in making the stipulation, were tax-payers then, as now. No tax-payer, in anjr manner, objected to the tax of 1873. The fair presumption is, that it was quietly paid, because it was understood that the terms of annexation granted to the city the power to levy and collect it.
But it is urged that the stipulation, so construed, was ineffective, because section 2, of Article XII, of the State Constitution, requires that all taxes shall, by a uniform rule, rest upon all taxable property within the municipality.
So long as East Cleveland continued its separate existence, its council could levy taxes on its duplicate to pay' these bonds.
The two municipalities were by statute given power to fix any terms, not conflicting with existing laws. Sec. 705 Municipal Code, (66 Ohio Laws, 268,) provided that, “such annexation shall not affect, or in anywise impair, any rights, or liabilities, existing at the time of the annexation, either, in favor of, or against, said corporations; and suits, founded upon such rights and liabilities, may be commenced, * * and carried to -final judgment and execution, the same as though such annexation had not taken place.”
If such annexation had not taken place, the holder of one' of these bonds, after default, could obtain judgment against-the village; and, through a proper court, compel the levy of a tax upon the village duplicate to pay it.
The annexation having taken place, the rights of such a bond holder remain the same, but the order for the levy of the .tax, to pay his judgment, can- only be enforced through the city council.
The effect of the statute was, to continue so much of the existence of the village, as is necessary to secure the' payment of its debts. The effect of the stipulation before.us was, to continue the existence of these bonds, as debts of the village' as between'the city and village. As between *675 bond bolder and village, they of course remained obligations of the village.
In levying the tax, the city does no more, than the bond holder could enforce through a court. If this were the only objection to the tax as levied, we feel sure that a court should not, at the instance of a tax-payer, enjoin the.voluntary doing of the very act, that, at the suit of a judgment creditor of the village, it would order to be done.
As already said, the effect of the statute and the stipulation, taken together, is to continue the existence of the village, so far as is necessary to legalize a tax, upon its duplicate, to pay a village debt, which, as between city and village, still remains a village debt. We think that the levy, of the tax in question, is not forbidden by Article XII, of the Constitution. It is simply a levy upon all taxable property within East Cleveland, to pay East Cleveland’s debt; to pay a debt that, that property is legally bound to pay in that way.
But it is urged that the city was, by the statute in force, forbidden to levy a greater aggregate tax than eleven mills, in addition to the tax for school and school-house purposes, and such further rate as was necessary to pay the interest on its public debt, and for cemetery purposes; and that the levy actually made, exclusive of the tax complained of; aggregated lO^ mills. The tax complained of was 3^ mills, making the aggregate in the two wards 13|-|- mills.
A village aggregate might be eight mills.
It is plain, that the village could not confer upon the city power to exceed the village aggregate. The city had and retained, full power to tax, up to its own aggregate. Its power to tax was given by the statute. Hence it could not legally pass the statutory limit.. If the village limit had been greater, for the year of the levy, than that of the city, under the doctrines hereinbefore stated, the city could, within the two wards, for the purpose before us, tax up to said village limit.
In making the levy complained of, the city.exceeded both limits. An ordinance levying a tax, on the two wards, *676 which, when added to the other taxes, computable in fixing the aggregate that could lawfully be imposed, did not exceed eleven mills, would have been valid. The levy actually made was ivholly void, because it made an aggregate greater than eleven mills. No part of it is sustained by valid action of the council. Ohio v. Humphries, 25 Ohio St., 520; Cummings v. Fitch, 40 Id., 56.
The city claims that the levy complained of is not a tax computable as part of the eleven mills, but is a special assessment upon specified property.
Sec. 581, Municipal Code, (66 Ohio Laws, 248,) reads thus:
“ If, in the opinion of the council, it would be equitable, the whole, or a proportion, of the cost of the improvement, as may be fixed by the council, * * may be raised- by the levy and assessment, by the council, of a tax upon the general duplicate of all the real and personal property subject to taxation within the limits of the corporation.” If the village had continued to exist, the levy to pay these bonds would have been a tax under this section. As already stated, the village, having .once exhausted its power to determine the distribution-of the cost of the improvement, could not, afterwards, increase the burden upon the abutting lots. That distribution finally determined how the respective shares of the cost should be paid. In levying such tax, the city council acts instead of the village council,. and can make no change in the nature of the levy. In the words of Judge White (The State v. Strader, 25 Ohio St., 536), “ we see no just ground on which taxes raised by general levy, for the improvement of streets, can be excluded from the aggregate amount of taxes, to the levying of which corporations-áre restricted.”
As already said this - is a tax levied upon the general duplicate of East Cleveland. It must be counted as part of the aggregate levy for the two wards.
This conclusion may make it difficult for the city to enjoy the full benefit of Stipulation 3, but no court can help it. The legislature of course has power to raise the limit of *677 taxation for municipalities. Whatever that limit may be at the time of making a levy, the city can go to it, but not beyond it.
Therefore the district court did not err in enjoining the collection of the tax and its action in so doing is

Affirmed.